**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CASEY LEE EGGLESTON, BOBBY LEE MUTZ, | § § | |
| *Plaintiffs* | § § | SA-23-CV-01486-XR |
| -vs- | § § § | |
| TSH TRUCKING, INC., TATEVOS ISKHANYAN, | § § § | |
| *Defendants* | § | |

**ORDER ON DEFENDANTS' *DAUBERT* MOTION**

On this date, the Court considered Defendants' motion to exclude or limit the expert testimony of Kerry V. Nelson (ECF No. 65) and Plaintiffs' response (ECF No. 67). After careful consideration, the Court issues the following order.

**BACKGROUND**

This lawsuit arises from a rear-end collision involving three vehicles on Loop 1604 in Bexar County, Texas on September 28, 2022. Plaintiff Bobby Mutz was driving a GMC truck behind Plaintiff Casey Eggleston, who was driving a Jeep Bronco. ECF No. 1-3 at 5. Plaintiffs both came to a stop due to traffic in front of them. *Id.* Defendant Tatevos Isakhanyan, while driving an 18-wheeler owned and operated by Defendant TSH Trucking Inc. ("TSH"), did not stop and rear-ended Plaintiff Mutz, causing Plaintiff Mutz to hit Plaintiff Eggleston from behind. *Id.*

Plaintiffs filed suit in state court, alleging claims for negligence, negligence per se, and gross negligence. *See id.* at 6–8. Defendants removed the case to federal court based on diversity jurisdiction. *See* ECF No. 1. In April 2025, the Court granted Defendants' motion for summary judgment as to Plaintiffs' gross negligence claims and dismissed those claims with prejudice. *See* ECF No. 66.

Plaintiffs designated Kerry V. Nelson as a "truck and safety expert" who is expected to testify on fleet vehicle safety, commercial driver training, compliance with Department of Transportation ("DOT") regulations, and causation. ECF No. 65-2 at 2–3.

Mr. Nelson produced a written report on July 12, 2024, expressing the following opinions:

1. Mr. Isakhanyan failed to keep a proper lookout while operating the company fleet vehicle on his approach to the traffic ahead.

2. Mr. Isakhanyan failed to maintain an assured clear distance between his company vehicle and the traffic ahead of him.

3. Mr. Isakhanyan failed to control the speed of his company fleet vehicle by failing to stop prior to striking the vehicle ahead.

4. Mr. Isakhanyan violated Texas Transportation Code ("TTC") § 545.351 (Maximum Speed Requirement).

5. Mr. Isakhanyan violated TTC § 545.062 (Following Distance Requirement).

6. There is no documented evidence that TSH provided any reasonable driver safety training to Mr. Isakhanyan prior to the time of the collision.

7. TSH and Mr. Isakhanyan created an extreme degree of risk of serious bodily Injury to Ms. Eggleston and others, including the motoring public, and demonstrated a conscious indifference for the safety and welfare of Ms. Eggleston and others, including the motoring public (the "Gross Negligence Opinion").

*Id.* at 13. Mr. Nelson was deposed on March 10, 2025. *See* ECF No. 65-1, Kerry Dep.

Defendants seek to strike Mr. Nelson's testimony, challenging both his expert qualifications and the reliability of his opinions on causation and gross negligence. *See* ECF No. 65. Given that Plaintiffs' gross negligence claims have been dismissed, their objections to Nelson's gross-negligence opinions are moot. Accordingly, the Court turns its attention to Plaintiffs' remaining arguments.

**DISCUSSION**

I.     **Legal Standard**

Rule 702 of the Federal Rules of Evidence allows a witness "who is qualified as an expert" to testify if:

a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

b)  the testimony is based on sufficient facts or data;

c)  the testimony is the product of reliable principles and methods; and

d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. The Supreme Court's decision in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. As a preliminary matter, a district court "must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702). If the expert is qualified, a court must follow *Daubert*'s analytical framework to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing reliability: (1) whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards

3

and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id*. at 593–94; *see also Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*.

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." FED. R. EVID. 401. Expert testimony in the form of legal opinion invades the province of the Court and does not assist the trier of fact. While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999); *see also Askanase v. Fatjo*, 130 F.3d 657, 672–73 (5th Cir. 1997).

A trial court's role as gatekeeper under *Daubert* "is not intended to serve as a replacement for the adversary system." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (citing Rule 702 advisory committee's note). Thus, in determining the admissibility of expert testimony, the court should approach its task "with proper deference to the [factfinder]'s role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on

the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

## II.    Analysis

Defendants argue that Mr. Nelson's testimony should be excluded because (1) he is not an accident reconstructionist and thus is not qualified to testify as to issues bearing on causation; (2) his opinions are unreliable because they have not been tested or peer reviewed and are based only on his review of the police report, deposition testimony, and applicable regulations. ECF No. 65.

In support of their motion, Defendants point to three previous cases in which similar opinions as to driver negligence proffered by Mr. Nelson have been stricken or limited for the same reasons that Defendants urge here. *See Alpizar v. John Christner Trucking, LLC*, No. SA-17-CV-712-FB, 2019 WL 1643743, at *10 (W.D. Tex. Apr. 16, 2019), *report and recommendation adopted*, 2019 WL 4087445 (W.D. Tex. May 17, 2019); *Perez v. Boecken*, No. SA-19-CV-375-XR, 2020 WL 3074420, at *9 (W.D. Tex. June 10, 2020); *Manson v. B&S Trucking of Jackson, LLC*, No. SA-21-CV-1181-XR, 2023 WL 3170494, at *7 (W.D. Tex. May 1, 2023), *reconsideration denied*, 2024 WL 3223693 (W.D. Tex. May 28, 2024).

In *Alpizar*, Mr. Nelson was designated to testify as to the defendant-driver's failure to be attentive and to maintain safe following distance. 2019 WL 1643743, at *10. He based his opinion on his review of "the police report and [the driver's] deposition, as well as the Federal Motor Carrier Safety Regulations and the Texas Commercial Motor Handbook regarding the need to maintain a safe following distance." *Id.* The Magistrate Judge prohibited Mr. Nelson from offering testimony regarding the driver's alleged actions or omissions, but permitted him to testify "as a

trucking safety expert on 18-wheelers generally," including safe following distances and typical protocols to avoid a collision when operating an 18-wheeler. *Id.*

In *Perez* and *Manson*, this Court imposed the same limitations on Mr. Nelson's testimony:

> The Court agrees with Defendants that Nelson's testimony regarding Defendant Boecken's actions or omissions is inadmissible as expert testimony under Rule 702. Although Nelson is "qualified as an expert by knowledge, skill, experience, training, or education" to testify about trucking safety and regulations generally, his opinions about the specific accident in this case are supported by nothing more than his review of photographs and deposition testimony. Such testimony is not "the product of reliable principles and methods," as required by Rule 702—rather, it is merely the conclusion of the expert connected to the underlying facts only by the expert's *ipse dixit.* Therefore, Nelson's opinions regarding Boecken's actions or omissions will be excluded. Nelson will be permitted to testify regarding a CMV-operator's obligations generally; he will not be permitted to testify regarding Boecken's failure to comply with those obligations.

*Perez*, 2020 WL 3074420, at *9 (citation omitted) (citing *Kumho Tire Co.*, 526 U.S. at 15); *Manson*, 2023 WL 3170494, at *7 ("Mr. Nelson will be permitted to testify about a commercial motor vehicle operator's obligations generally; he will not be permitted to testify regarding Arias-Padilla's failure to comply with those obligations.").

Plaintiffs insist that Mr. Nelson's "qualifications are beyond reproach," stating:

> Mr. Nelson is a trucking safety expert and former highway patrol officer with the Arizona Department of Public Safety who has been designated to testify to Defendant Isakhanyan's failure to comply with DOT regulations as well as Defendant TSH Trucking's failure to maintain the required DOT documents, conduct the necessary safety training or maintain accurate driver qualification files and/or driver logs. Defendants are using their lack of compliance with the DOT regulations as a sword.

ECF No. 67 at 4–5. Plaintiffs also argue that *Alpizar*, *Perez*, and *Manson* are inapposite because, in those cases, the direct liability claims against the motor carriers had been dismissed, while the claims against TSH in this case remain to be tried. In the Court's view, this is a distinction without a difference: Defendants' objections do not appear to be directed at Mr. Nelson's testimony on

DOT regulations generally, however, but his opinions on their compliance with those regulations.[1] The Court finds no reason to depart from its rulings limiting Mr. Nelson's testimony in *Perez* and *Manson*.

## CONCLUSION

After careful consideration, Defendants' motion (ECF No. 65) is **GRANTED IN PART** and **DENIED IN PART**. Mr. Nelson will be permitted to testify about a commercial motor vehicle operator's obligations generally; he will not be permitted to testify regarding Defendants' failure to comply with those obligations.

It is so **ORDERED**.

**SIGNED** this 11th day of June, 2025.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[1] Even if Mr. Nelson were qualified to testify as an accident reconstructionist, his opinions contain a number of impermissible legal conclusions as to the proper standard of care and Mr. Isakhanyan's violations of TTC §§ 545.351 and 545.062. While an expert opinion "is not objectionable just because it embraces an ultimate issue" to be decided by the trier of fact, FED. R. EVID. 704(a), experts may not offer legal opinions or advise the Court on how the law should be interpreted or applied to the facts in the case. *See Estate of Sowell*, 198 F.3d at 171; *Snap-Drape, Inc. v. C.I.R.*, 98 F.3d 194, 198 (5th Cir. 1996) (experts may not render conclusions of law). Such testimony "both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). These opinions must be excluded. *See Stewart v. Hankins*, No. 4:15-CV-586, 2016 WL 7971299, at *3 (E.D. Tex. Oct. 26, 2016) (excluding expert opinions as to whether the parties violated TTC § 545 by failing the stop at a red light and failing to wait to proceed into the intersection until it was safe to do so because whether the parties "shared responsibility for Plaintiff's alleged injuries is an 'issue the jury must resolve after appropriate legal instructions by the court'") (quoting *Owen*, 698 F.2d at 240)); *see also Goodman v. Harris County*, 571 F.3d 388, 399 (5th Cir. 2009) (expert opinions as to whether a defendant violated the law are inadmissible).